**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| MICHAEL HICKINGBOTTOM, )<br>)<br>Petitioner, )<br>v. )<br>)<br>BRETT MIZE, )<br>)<br>Respondent. ) | No. 1:09-cv-538-DFH-DML |

**Entry Discussing Petition for Writ of Habeas Corpus**

Petitioner Michael Hickingbottom ("Hickingbottom") seeks a writ of habeas corpus with respect to his 2005 Lake County conviction for the murder of David Reed. Because the pleadings and the expanded record do not establish Hickingbottom's entitlement to relief, however, his petition for a writ of habeas corpus must be denied and this action dismissed.

**I. Background**

Hickingbottom was convicted in his third trial after two juries failed to reach verdicts. His murder conviction was affirmed on appeal in *Hickingbottom v. State,* No.45A03-0502-CR-77(Ind. Ct. App. Feb. 8, 2006) (*Hickingbottom I*). The trial court's subsequent denial of Hickingbottom's petition for post-conviction relief was affirmed on appeal in *Hickingbottom v. State,* No.45A05-0705-PC-243 (Ind. Ct. App. July 11,2008) (*Hickingbottom II*). The Indiana Supreme Court denied Hickingbottom's petition for transfer on September 18, 2008.

This action followed. Hickingbottom asserts the following claims:

1. The trial court violated the Interstate Agreement on Detainers ("the IAD") and Hickingbottom's right to a speedy trial;

2. The trial court abused its discretion in not granting a mistrial after a juror was told by a bailiff to "find him guilty";

3. Trial counsel was ineffective by not moving for a mistrial after the juror/bailiff incident;

4. Trial counsel was ineffective for failing to object to testimony by Maurice Reed that Hickingbottom had robbed the murder victim the day before the murder;

5. The State's evidence was insufficient to rebut sudden heat; and

6. The admission of Maurice Reed's testimony about the robbery was fundamental error.

## II. Discussion

### A. Applicable Law

"A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a) (1996). See *Conner v. McBride,* 375 F.3d 643, 649 (7th Cir. 2004).

Review of the habeas petition here is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lambert v. McBride,* 365 F.3d 557, 561 (7th Cir. 2004). Under the AEDPA, if a state court adjudicated a constitutional claim on the merits, a federal court may grant habeas relief only if the state court decision was contrary to, or involved an unreasonable application of, Supreme Court precedent, or if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding. 28 U.S.C. § 2254(d)(1), (2); *Early v. Packer,* 537 U.S. 3, 7-8 (2003); *Lambert,* 365 F.3d at 561.

In addition to the foregoing substantive standard, "[a] state prisoner . . . may obtain federal habeas review of his claim only if he has exhausted his state remedies and avoided procedurally defaulting his claim." *Thomas v. McCaughtry,* 201 F.3d 995, 999 (7th Cir. 2000). Procedural default occurs either (1) when a petitioner failed to exhaust state remedies and the court to which he would have been permitted to present his claims would now find such claims procedurally barred, *Coleman v. Thompson,* 501 U.S. 722, 735 n.1 (1990), or (2) "if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Id.* at 729. When a habeas petitioner has committed procedural default, the habeas court may not reach the merits of the habeas claims unless the habeas petitioner overcomes the consequences of that waiver by "demonstrat[ing] either (a) cause for the default and prejudice (i.e., the errors worked to the petitioner's '*actual* and substantial disadvantage,'); or (b) that failure to consider his claim would result in a fundamental miscarriage of justice (*i.e.*, a claim of actual innocence)." *Conner,* 375 F.3d at 648 (internal citations omitted).

### B. Speedy Trial

Hickingbottom claims that he was denied the right to a speedy trial under the IAD. Specifically, Hickingbottom claims that he was tried beyond the 180-day period in contravention to the IAD. Hickingbottom's trial counsel's motion to dismiss his case based on this issue was denied. This claim was not presented to the Indiana appellate courts. This claim is now waived, and the merits cannot be reached in the absence of a showing of cause and prejudice for the waiver or that a fundamental miscarriage of justice would

result from failing to reach it.  Hickingbottom has not shown cause for or prejudice from this procedural default, nor has he shown that the failure to consider his claim would result in a fundamental miscarriage of justice.  Accordingly, this court is precluded from reaching the merits of this claim.

### C.  Motion for Mistrial

During a break during the trial, one juror ran into a bailiff whom he knew.  In a quick conversation in which the juror explained what he was doing at the courthouse, the bailiff said to the juror: "find him guilty."  A chief bailiff overheard and reported the incident.  The juror was removed and replaced by an alternate at the request of the defense, without objection from the prosecution.  The trial judge asked jurors as a group whether anyone else had heard the conversation between the one juror and the bailiff, and the record indicates that all said no.  The trial proceeded.

Hickingbottom claims that the trial court abused its discretion in failing to declare a mistrial after this incident.  This claim was not raised by Hickingbottom on direct appeal and is therefore procedurally defaulted.

Hickingbottom claims in his traverse that trial counsel was ineffective by failing to demand an individual poll of the jurors and by failing to make an objection or move for a mistrial.  Hickingbottom raised this claim in the post-conviction proceedings.  The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." *Strickland v. Washington,* 466 U.S. 668, 684 (1984).  For a petitioner to establish that "counsel's assistance was so defective as to require reversal" of a conviction or a sentence, he must make two showings: (1) deficient performance that (2) prejudiced his defense.  *Strickland,* 466 U.S. at 687.

With respect to the first prong, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  *Wiggins v. Smith,* 539 U.S. 510, 521 (2003) (quoting *Strickland,* 466 U.S. at 688).  In addition, the performance of counsel under *Strickland* should be evaluated from counsel's perspective at that time, making every effort to "eliminate the distorting effects of hindsight."  *Id.* at 523 (quoting 466 U.S. at 688); see also *Kokoraleis v. Gilmore,* 131 F.3d 692, 696 (7th Cir. 1997).

With respect to the prejudice requirement, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland,* 466 U.S. at 694; see also *Benefiel v. Davis,* 357 F.3d 655, 661 (7th Cir. 2004).  In collateral review in the federal courts, the AEDPA raises the bar for the petitioner even higher:

> The bar for establishing that a state court's application of the *Strickland* standard was "unreasonable" is a high one: we have stated on prior occasion that "'*only a clear error* in applying *Strickland* would support a writ of habeas

corpus,'" *Dixon v. Snyder*, 266 F.3d 693, 700-01 (7th Cir. 2001) (quoting *Holman v. Gilmore*, 126 F.3d 876, 882 (7th Cir. 1997)), because "*Strickland* calls for inquiry into degrees," thereby "add[ing] a layer of respect for a state court's application of the legal standard." *Whitehead v. Cowan*, 263 F.3d 708, 731 (7th Cir. 2001) (emphasis added). Accordingly, this Court *is obligated to affirm the district court's decision to deny the writ, so long as the Wisconsin Court of Appeals* "*t[ook] the [constitutional standard] seriously and produce[d] an answer within the range of defensible positions.*" *Mendiola v. Schomig,* 224 F.3d 589, 591 (7th Cir. 2000) (emphasis added).

*Murrell v. Frank,* 332 F.3d 1102, 1111-12 (7th Cir. 2003). Hickingbottom contends that his trial counsel was ineffective by failing to demand an individual poll of the jurors and by failing to object to or move for a mistrial. The Indiana Court of Appeals correctly recognized the *Strickland* standard, noting each of its two prongs. *Hickingbottom II,* at p. 3. The Indiana Court of Appeals then reviewed this claim and explained:

> All of the parties were apprised of the situation, defense counsel requested the removal of the juror, and the remaining jurors indicated they did not overhear the 'substance of the conversation.' In the absence of any evidence to the contrary, Hickingbottom has not established that trial counsel's actions to remedy the problem fell below an objective standard of reasonableness.

*Hickingbottom II*, at p.6 (citations omitted).

The Indiana Court of Appeals in *Hickingbottom II* "took the constitutional standard seriously and produced an answer within the range of defensible positions." *Mendiola v. Schomig,* 224 F.3d 589, 591 (7th Cir. 2000). This court cannot find that the Indiana Court of Appeals "unreasonably applie[d] [the *Strickland* standard] to the facts of the case," so Hickingbottom's claims of ineffective assistance of counsel at trial do not support the award of habeas corpus relief. *Murrell,* 332 F.3d at 1111 (citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

### D. Maurice Reed's testimony

Hickingbottom's second claim of ineffectiveness is that trial counsel failed to object to Maurice Reed's testimony that Hickingbottom had robbed David Reed the night before he was murdered. As to this claim, the Indiana Court of Appeals concluded:

> it was within the trial court's discretion to conclude that [the robbery] was an intrinsic act because it occurred at the same location and involved the same victim and was relatively close in time. Hickingbottom has not shown that had trial counsel made a proper objection at trial, the trial court 'would have had no choice but to sustain it.'

*Hickingbottom II*, at p. 5 (citations omitted). Again, the Indiana Court of Appeals recognized and reasonably applied the *Strickland* standard to these contentions. The admission of Maurice Reed's testimony about the robbery was admissible as intrinsic to the murder itself. A challenge to this testimony would have been futile in the circumstances of

Hickingbottom's case. This shows that the necessary element of prejudice was absent. See, e.g., *Hough v. Anderson,* 272 F.3d 878, 898 n.8 (7th Cir. 2001)("It is not deficient performance to fail to raise an argument with no real chance of success.").

### E.  Sufficiency of the evidence

Hickingbottom claims that the State's evidence failed to rebut his claim that he killed David Reed in sudden heat.  Prior to the AEDPA, a challenge to the sufficiency of the evidence was analyzed in a federal habeas proceeding by determining "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979).  Under the AEDPA, federal review of these claims "therefore now turns on whether the state court provided fair process and engaged in reasoned, good-faith decision-making when applying *Jackson's* 'no rational trier of fact' test."  *Gomez v. Acevedo,* 106 F.3d 192, 199 (7th Cir. 1997), *vacated on other grounds, Gomez v. DeTella,* 522 U.S. 801 (1997).

The Indiana Court of Appeals noted that: (1) in the time leading up to the murder, David Reed was standing outside his house talking with friends when Hickingbottom arrived and Reed told Hickingbottom that he did not want him on his property; (2) a verbal argument and then a physical fight ensued; (3) Reed's friend broke up the fight; (4) Hickingbottom did not shoot Reed at that time, but instead presumably walked to Martin's house, which was at least 10 houses away, retrieved his rifle, then walked back to David Reed's home where Maurice Reed saw him kick in the door; and (5) Hickingbottom went into David Reed's house, called for Reed and shot several bullets into the rear of Reed's home, at which time Reed came out of a bedroom and was shot by Hickingbottom. *Hickingbottom I*, at pp 9-10. The Indiana Court of Appeals then concluded:

> It was reasonable for the jury to conclude that during the time it took Hickingbottom to walk to Martin's house, get his gun, and walk back to Reed's house, Hickingbottom had time to coolly reflect on the situation. Given this time for reflection, the jury could conclude that Hickingbottom's actions were premeditated and the product of deliberation.

*Hickingbottom I*, at p.10. Here, the only appropriate inquiry under *Jackson*, "is whether, assuming the jury resolved all disputes in the state's favor and drew all inferences from that evidence, it would have been rational to convict. Not whether we would convict, but whether thoughtful people could convict." *Branion v. Gramly,* 855 F.2d 1256, 1266 (7th Cir. 1988).

The Indiana Court of Appeals' discussion of the evidence provided Hickingbottom and the State of Indiana with fair process and constituted reasoned, good-faith decision-making when applying *Jackson's* "no rational trier of fact" test.  The determination by the Indiana Court of Appeals that the evidence was sufficient did not run afoul of the AEDPA standard as expressed in 28 U.S.C. § 2254(d)(1).  Hickingbottom  is not entitled to relief based on this claim.

### F.  Fundamental Error

Hickingbottom's final claim is that the admission of Maurice Reed's testimony about the uncharged robbery was fundamental error. Hickingbottom states that this claim was raised at direct appeal. However, Hickingbottom did not present this claim to the Indiana courts with a federal constitutional basis, and 28 U.S.C. § 2254(a) itself makes federal habeas relief contingent on a violation of "the Constitution or laws . . . of the United States." See *Rose vs. Hodges,* 423 U.S. 19, 21 (1975) ("A necessary predicate for the granting of federal habeas relief [to a petitioner] is a determination by the federal court that [his or her] custody violates the Constitution, laws, or treaties of the United States.").

Furthermore, even if Hickingbottom did present this claim to the Indiana Courts with a federal constitutional basis, he could not prevail. In most cases, state evidentiary rulings are not subject to collateral review. See *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions"); *Dressler v. McCaughtry,* 238 F.3d 908, 914 (7th Cir. 2001). Federal habeas courts may review a state evidentiary ruling only if it is erroneous and is of a constitutional magnitude, *i.e.,* the state court's ruling must be so prejudicial as to compromise the habeas petitioner's due process right to a fundamentally fair trial creating the likelihood that an innocent person was convicted. *Morgan v. Krenke*, 232 F.3d 562 (7th Cir. 2000). The trial court's ruling in this case was not of this nature.  This claim will not support the award of federal habeas relief.

### III.  Conclusion

This court has carefully reviewed the state record in light of Hickingbottom's claims and has given such consideration to those claims as the limited scope of its review in a habeas corpus proceeding permits.  "A defendant whose position depends on anything other than a straightforward application of established rules cannot obtain a writ of habeas corpus."  *Liegakos v. Cooke,* 106 F.3d 1381, 1388 (7th Cir. 1997).  No such established rules entitle Hickingbottom to relief in this case.  Hickingbottom's petition for a writ of habeas corpus and his motion for summary judgment are therefore **denied.**  His motion for extension of time (dkt 27) is **granted.**  Judgment consistent with this Entry shall now issue.

So ordered.

_____
DAVID F. HAMILTON, Chief Judge
United States District Court

Date:  October 30, 2009